**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

KHALID AUSTIN MAHAMMED,

    Plaintiff,

    v.                                                                Civil Action: BAH-23-1333

CHRISTOPHER SMITH, Warden, and
MS. BOYD, Lt.

    Defendants.

**<u>MEMORANDUM OPINION</u>**

On May 18, 2023, self-represented Plaintiff Khalid Austin Mahammed[1] filed a civil rights complaint, pursuant to 42 U.S.C. § 1983. ECF 1. Defendants Christopher Smith and Adrian Boyd[2] moved to dismiss the complaint, or alternatively, for summary judgment in their favor. ECF 13. Mahammed was advised of his opportunity to respond to the dispositive motion and the risks of failing to do so. ECF 14. Mahammed has not filed any response to the motion. No hearing is necessary to determine the matters pending. *See* Loc. R. 105.6 (D. Md. 2023). For the reasons stated below, Defendants Smith and Boyd's motion, construed as a motion for summary judgment, will be granted.

    **I.**    ***Background***

        **A. Mahammed's Allegations**

In Mahammed's complaint, he alleges that on May 8, 2023, he purchased an "all access pass for [his] tablet." ECF 1, at 4. The following day he was transferred to disciplinary segregation without notice or a hearing. *Id.* Mahammed was advised that he was "not in any trouble and

---

[1] The Clerk shall amend the docket to reflect the correct spelling of Plaintiff's name as Khalid Mahammed.

[2] The Clerk shall amend the docket to reflect the full name of Defendant Boyd.

everything would be ok." *Id.*  However, as soon as he was assigned to disciplinary segregation his telephone calls were restricted, his ability to text was turned off, and his commissary privileges, other than access to hygiene items, were suspended. *Id.*  Mahammed states that he was treated as though he was serving an infraction but did not receive one. *Id.*  He alleges that his right to procedural due process was violated and he has been subjected to cruel and unusual punishment. *Id.* at 5.  As relief, Mahammed seeks compensatory and punitive damages. *Id.*

### B. Defendants' Motion

Defendants Smith and Boyd filed a motion seeking dismissal of the complaint or, in the alternative, summary judgment in their favor. ECF 13 (motion); ECF 13-1 (memorandum in support of motion).  Defendants argue that the complaint should be dismissed because: (1) Mahammed has not exhausted his administrative remedies; and (3) Mahammed fails to state a claim. *Id.*

In support of their motion, Defendants submit: Mahammed's Notices of Assignment to Administrative Segregation  (ECF 13-2); a declaration of Lt. Adrian Boyd (ECF 13-3); Mahammed's traffic history (ECF 13-4); a declaration of Krystal Morton, the Administrative Remedy Procedure ("ARP") Coordinator for Maryland Correctional Institution-Jessup ("MCIJ") (ECF 13-5); MCIJ Institutional Directive regarding the inmate tablet program (ECF 13-6); Department Directive regarding Tablet Computer Program (ECF 13-7); ARP MCIJ-0197-23 (ECF 13-8); ARP MCIJ-0204-03 (ECF 13-9); and a declaration of Correctional Case Manager Kareen Wallace (ECF 13-10).

Krystal Morton avers that as the ARP Coordinator at MCIJ, she researched all ARPs filed by Mahammed while housed at MCIJ which included MCIJ-0197-23 and MCIJ-0204-23.  ECF 13-5, at 1 ¶ 5.  In ARP MCIJ-0197-23, Mahammed complained that he purchased an all-access

pass on his tablet on May 8, 2023, but was placed on disciplinary segregation the following day. ECF 13-8, at 5.  In his ARP, he asked to have his pass turned back on and that he be permitted to go to commissary.  *Id*.  In reviewing ARP MCIJ-0197-23, Morton investigated why Mahammed was moved to disciplinary segregation on May 8, and was advised that Mahammed had a conflict with his cellmate and there were no administrative segregation cells available to house Mahammed.  ECF 13-5, at 2 ¶ 8.  As such, Morton recommended the ARP be dismissed as inmates housed on disciplinary segregation are only permitted to access free content on their tablets, not paid content.  *Id*.; ECF 13-8, at 3–4.  On May 30, 2023, the Warden dismissed Mahammed's ARP advising that regardless of Mahammed's status, once he was placed in disciplinary segregation, he was no longer allowed to access the paid services on the tablet.  *Id*. at 1.

On May 17, 2023, Mahammed filed ARP MCIJ-0204-23 alleging that he was denied his 30 day all access pass for his tablet despite having not received a "ticket."  ECF 13-9, at 1. The ARP was dismissed as repetitive to a previously filed ARP.  *Id*.

## II.   *Standard of Review*

Defendants argue that the complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6), or, alternatively, that summary judgment should be granted in their favor pursuant to Fed. R. Civ. P. 56.  *See* ECF 13-1.  A motion to dismiss styled in the alternative as a motion for summary judgment implicates the Court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure.  *See Kensington Vol. Fire Dept., Inc. v. Montgomery Cnty*., 788 F. Supp. 2d 431, 436–37 (D. Md. 2011), *aff'd* 684 F.3d 462 (4th Cir. 2012).  Conversion of a motion to dismiss to one for summary judgment under Rule 12(d) is permissible where a plaintiff has notice that the motion may be disposed of as one for summary judgment.  *See Laughlin v. Metro. Washington Airports Auth*., 149 F.3d 253, 260–61 (4th Cir. 1998).  When a movant expressly captions its motion to

dismiss "in the alternative" as one for summary judgment and submits matters outside the pleadings for the Court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur; the Court "does not have an obligation to notify parties of the obvious." *Laughlin*, 149 F.3d at 261; *see also* W*illey v. Bd. of Educ. of St. Mary's Cnty.*, 557 F. Supp. 3d 645, 657 (D. Md. 2021) ("Notably, 'the Federal Rules do not prescribe that any particular notice be given before a Rule 12 motion is converted to a Rule 56 motion.'" (quoting *Ridgell v. Astrue*, Civ. No. DKC-10-3280, 2012 WL 707008, at *7 (D. Md. Mar. 2, 2012))).

Because Defendants filed their motion as a motion to dismiss or, in the alternative, for summary judgment, Mahammed was on notice that the Court could treat the motion as one for summary judgment and rule on that basis.  Accordingly, the Court will review Mahammed's claims against Defendants under the Rule 56(a) standard and will consider the exhibits filed in support of Defendants' motion.

Rule 56 provides that summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "A dispute is genuine if 'a reasonable jury could return a verdict for the nonmoving party.'" *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (quoting *Dulaney v. Packaging Corp. of Am.*, 673 F.3d 323, 330 (4th Cir. 2012)).  "A fact is material if it 'might affect the outcome of the suit under the governing law.'" *Id.* (quoting *Henry v. Purnell*, 652 F.3d 524, 548 (4th Cir. 2011)).  Accordingly, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment . . . ." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).  "[I]n ruling on a motion for summary judgment, '[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor.'" *Tolan v. Cotton*, 572 U.S. 650, 651 (2014)

4

(per curiam) (quoting *Anderson*, 477 U.S. at 255) (second alteration in original). At the same time, the Court must "prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat v. Balt. Ravens Football Club, Inc.,* 346 F.3d 514, 526 (4th Cir. 2003) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993)).

The Court is mindful that Mahammed is a self-represented litigant. A federal court must liberally construe pleadings filed by pro se litigants to allow them to fully develop potentially meritorious cases. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). But liberal construction does not mean that a court can "ignore an obvious failure to allege facts setting forth a plausible claim for relief." *Sheehan v. Saoud*, 650 F. App'x 143, 152 (4th Cir. 2016) (citing *Weller v. Department of Social Services*, 901 F.2d 387, 391 (4th Cir. 1990)). A court cannot assume the existence of a genuine issue of material fact where none exists. Fed. R. Civ. P. 56(c).

## III.    *Discussion*

Defendants are entitled to summary judgment because Mahammed failed to exhaust available administrative remedies prior to filing his complaint. The Prisoner Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e, states that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The phrase "prison conditions" encompasses "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *see also Chase v. Peay*, 286 F. Supp. 2d 523, 527 (D. Md. 2003) (finding that "the exhaustion provision" of the PLRA "plainly extends" to suits regarding prison conditions). Exhaustion under § 1997e(a) is mandatory, and therefore a plaintiff must exhaust his available administrative

remedies before a court can hear his claim. *See Jones v. Bock*, 549 U.S. 199, 211 (2007) ("There is no question that exhaustion is mandatory under the PLRA . . . ."); *Ross v. Blake*, 578 U.S. 632, 638 (2016) (finding that "a court may not excuse a failure to exhaust"). Consequently, if Mahammed has not properly presented his claim through an available administrative remedy procedure, the claim must be dismissed pursuant to the PLRA. *See Ross*, 578 U.S. at 639.

Administrative exhaustion under § 1997e(a) is not, however, a jurisdictional requirement and does not impose a heightened pleading requirement on the detainee. *Jones*, 549 U.S. at 215–16. Rather, the failure to exhaust administrative remedies is an affirmative defense to be pleaded and proven by defendants. *See id.*; *Custis v. Davis*, 851 F.3d 358, 361 (4th Cir. 2017). The Court may dismiss a claim on this ground only if "the defendants raise the issue as an affirmative defense and the inmate has had an opportunity to respond to the affirmative defense" or in "the rare, exceptional instance where administrative exhaustion"—or lack thereof—is "apparent on the complaint's face." *Custis*, 851 F.3d at 362 (citing *Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008)).

To exhaust his administrative remedies, an inmate must complete "the administrative review process in accordance with the applicable procedural rules, including deadlines." *Woodford v. Ngo*, 548 U.S. 81, 88, 93 (2006); *Moore*, 517 F.3d at 725. This requirement is one of "proper exhaustion of administrative remedies, which 'means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits).'" *Woodford*, 548 U.S. at 93 (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)). A court will not dismiss a claim as unexhausted "if a prisoner, through no fault of his own, was prevented from availing himself of [an administrative remedy]." *Moore*, 517 F.3d at 725.

To pursue a grievance, a prisoner confined in a Maryland prison may file a grievance with the Inmate Grievance Office ("IGO") against any Division of Corrections official or employee. Md. Code Ann., Corr. Servs. ("C.S.") § 10-206(a).   However, if the prison has a grievance procedure that is approved by the IGO, the prisoner must first follow the institutional ARP process, before filing a grievance with the IGO.   *See* C.S. § 10-206(b).   There is an established administrative remedy procedure process that applies to all Maryland prisons.   Md. Code Regs ("COMAR") 12.02.28.01.   Therefore, when the ARP process provides a possible remedy, it must be followed and completed before an inmate may file a grievance with the IGO.

The ARP process consists of multiple steps.   For the first step, a prisoner is required to file his initial ARP with his facility's "managing official," COMAR 12.02.28.05(D)(1), which is defined by COMAR 12.02.28.02(B)(14) as "the warden or other individual responsible for management of the correctional facility" and defined under C.S. § 1-101(m) as "the administrator, director, warden, superintendent, sheriff, or other individual responsible for the management of a correctional facility."   Moreover, the ARP request must be filed within 30 days of the date on which the incident occurred, or within 30 days of the date the prisoner first gained knowledge of the incident or injury giving rise to the complaint, whichever is later.   COMAR 12.02.28.09(B).

The second step in the ARP process occurs if the managing official denies a prisoner's initial ARP or fails to respond to the ARP within the established time frame.   The prisoner has 30 days to file an appeal to the Commissioner of Corrections.   COMAR 12.02.28.14(B)(5).

If the Commissioner of Correction denies an appeal, the prisoner has 30 days to file a grievance with the IGO.[3]   COMAR 12.02.28.18; C.S. § 10-206(a); COMAR 12.07.01.05(B).

---

[3] If the Commissioner fails to respond, the grievant shall file their appeal within 30 days of the date the response was due.   COMAR 12.07.01.05(B)(2).

When filing with the IGO, a prisoner is required to include copies of the following: the initial request for administrative remedy, the warden's response to that request, a copy of the ARP appeal filed with the Commissioner of Correction, and a copy of the Commissioner's response. COMAR 12.07.01.04(B)(9)(a). If the grievance is determined to be "wholly lacking in merit on its face," the IGO may dismiss it without a hearing. C.S. § 10-207(b)(1); *see also* COMAR 12.07.01.06(B). An order of dismissal constitutes the final decision of the Secretary of the Maryland Department of Public Safety and Correctional Services ("DPSCS") for purposes of judicial review. C.S. § 10-207(b)(2)(ii). However, if a hearing is deemed necessary by the IGO, the hearing is conducted by an administrative law judge with the Maryland Office of Administrative Hearings. *See* C.S. § 10-208; COMAR 12.07.01.07-.08. The conduct of such hearings is governed by statute. *See* C.S. § 10-208; COMAR 12.07.01.07(D); *see also* Md. Code Ann., State Gov't § 10-206(a)(1).

A decision of the administrative law judge ("ALJ") denying all relief to the inmate is considered a final agency determination. C.S. § 10-209(b)(1)(ii); COMAR 12.07.01.10(A)(2). However, if the ALJ concludes that the inmate's complaint is wholly or partly meritorious, the decision constitutes a recommendation to the Secretary of DPSCS, who must make a final agency determination within fifteen days after receipt of the proposed decision of the administrative law judge. *See* COMAR 12.07.01.10(B); C.S. § 10-209(b)(2)(c).

The final agency determination is subject to judicial review in Maryland state court, so long as the claimant has exhausted his/her remedies. *See* C.S. § 10-210. An inmate need not, however, seek judicial review in state court in order to satisfy the PLRA's administrative exhaustion requirement. *See, e.g.*, *Pozo*, 286 F.3d at 1024 ("[A] prisoner who uses all administrative options that the state offers need not also pursue judicial review in state court.").

The PLRA's exhaustion requirement serves several purposes.  These include "allowing a prison to address complaints about the program it administers before being subjected to suit, reducing litigation to the extent complaints are satisfactorily resolved, and improving litigation that does occur by leading to the preparation of a useful record." *Bock*, 549 U.S. at 219; *see Moore* 517 F.3d at 725 (explaining that exhaustion means providing prison officials with the opportunity to respond to a complaint through proper use of administrative remedies).  The exhaustion requirement is designed so that prisoners pursue administrative grievances until they receive a final denial of the claims, appealing through all available stages in the administrative process. *Chase*, 286 F. Supp. 2d at 530; *Gibbs v. Bureau of Prisons*, 986 F. Supp. 941, 943–44 (D. Md. 1997) (dismissing a federal prisoner's lawsuit for failure to exhaust, where plaintiff did not appeal his administrative claim through all four stages of the BOP's grievance process); *see also Booth v. Churner*, 532 U.S. 731, 735 (2001) (affirming dismissal of prisoner's claim for failure to exhaust where he "never sought intermediate or full administrative review after prison authority denied relief"); *Thomas v. Woolum*, 337 F.3d 720, 726 (6th Cir. 2003) (noting that a prisoner must appeal administrative rulings "to the highest possible administrative level").

Exhausting administrative remedies after a complaint is filed will not save a case from dismissal for failure to exhaust administrative remedies.  *See Neal v. Goord*, 267 F.3d 116, 121–22 (2d Cir. 2001), *overruled on other grounds by Porter v. Nussle*, 534 U.S. 516 (2002).   In *Freeman v. Francis*, the Sixth Circuit stated: "The plain language of the statute [§ 1997e(a)] makes exhaustion a precondition to filing an action in federal Court. . . . The prisoner, therefore, may not exhaust administrative remedies during the pendency of the federal suit."  196 F.3d 641, 645 (6th Cir. 1999).  This Court has consistently recognized this principle.  *Kitchen v. Ickes*, 116 F. Supp. 3d 613, 624–25 (D. Md. 2015); *Wilson v. MCTC Admin.*, Civ. No. PWG-21-3094, 2022 WL

14849012 at *6 (D. Md. Oct. 26, 2022); *Leupolu v. Okoluku*, Civ. No. SAG-21-1854, 2022 WL 4017308 at *4 (D. Md. Sept. 1, 2022); *Hand v. Allen*, Civ. No. JKB-20-3119, 2022 WL 137978 at *4 (D. Md. Jan. 14, 2022); *Wooten v. Hogan*, Civ. No. CCB-20-1218, 2021 WL 416947 at *3 (D. Md. Sept. 14, 2021); *Ervin v. Corizon Health*, Civ. No. ELH-19-1666, 2020 WL 2490042 at *28 (D. Md. May 13, 2020); *Conway v. Carr*, Civ. No. RDB-19-809, 2019 WL 4806141 at *5 (D. Md. Oct. 1, 2019); *Shiheed v. Webb*, Civ. No. GLR-16-3166, 2019 WL 3220122 at *5 (D. Md. July 16, 2019).

Here, the record evidence demonstrates that Mahammed only initiated the grievance process by filing two ARPs at the facility level. *See* ECF 13-8; ECF 13-9. There is no evidence that Mahammed ever appealed the denial of his institutional ARPs to the Commissioner or to the IGO as required. Moreover, the record is clear that he could not have filed and completed such appeals prior to instituting this case as the events complained of occurred on May 9, 2023, and Mahammed instituted this case on May 18, 2023, prior to receiving the Warden's denial of his first ARP and the day the second ARP was denied by the ARP coordinator. *See* ECF 13-8; ECF 13-9; ECF 1. Therefore, as Mahammed failed to exhaust administrative remedies prior to his filing this case, Defendants are entitled to summary judgment in their favor. The Court need not consider Defendants' additional defenses.

## IV.    *Conclusion*

For the foregoing reasons, Defendants Smith and Boyd's motion (ECF 13)—construed as a motion for summary judgment—will be granted and judgment will be entered in Defendants Smith and Boyd's favor.   A separate Order follows.

DATED: <u>July 22, 2024</u>                    <u>          /s/          </u>
                                      Brendan A. Hurson
                                      United States District Judge